1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

DAVID L. RAND,

              Plaintiff,

     v.

CITIBANK, N.A.,

              Defendant.

Case No. 14-cv-04772 NC

**ORDER DENYING MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Re:  Dkt. No. 12

       Plaintiff David Rand brings this action against Citibank alleging that Citibank obtained his credit report without authorization, made a false report to credit reporting agencies, and refused to remove incorrect information, in violation of federal and state law. Citibank now moves to dismiss the first amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Because the Court finds that Rand has sufficiently stated a claim for relief, the motion is DENIED.

## I. BACKGROUND

**A.     The Allegations of the Operative Complaint**

       In analyzing claims under Federal Rule of Civil Procedure 12(b)(6), the Court assumes that all material facts alleged in the complaint are true.  *Coal. For ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2010).  The operative, first amended complaint alleges that Rand is a long-time customer of Citibank, who was a victim

of identity theft in early 2014.  Dkt. No. 10 ¶¶ 8-9.  On June 14, 2014, an unknown individual attempted to obtain a Zales credit card from Citibank using Rand's stolen information.  *Id.* ¶ 10.  This application did not contain Rand's correct social security number.  *Id.*  Citibank then requested Rand's credit report from a credit reporting agency in connection with the fraudulent credit application.  *Id.* ¶ 12.  Citibank denied the application due to the fact that the social security information provided was inaccurate.  *Id.* ¶ 13.  This left a "hard credit inquiry" on Rand's credit report.  *Id.*  Shortly thereafter, Citibank received notice from both Rand and the credit reporting agency that the credit application was fraudulent and thus that the credit inquiry was unauthorized.  *Id.* ¶¶ 16-19.

The first amended complaint further alleges that Rand repeatedly contacted Citibank seeking the removal of the unauthorized inquiry on his credit report and Citibank promised that it will remove it.  *Id.* ¶¶ 19-22.  Citibank informed Rand by letter that it was investigating his concerns about the fraudulent credit application and that it had submitted a request to the credit reporting agency to change the unauthorized "hard inquiry" to a "soft inquiry."  *Id.* ¶¶ 24-25.  However, Citibank did not change the status of the credit inquiry on Rand's credit report, and did not remove the unauthorized credit inquiry.  *Id.* ¶ 26.  Furthermore, that same month, Citibank rejected Plaintiff's request for a line of credit increase in the amount of at least $4,300.  *Id.* ¶ 23.  The sole reason given for this rejection was "excessive recent credit inquiries."  *Id.*

**B.    Procedural History**

Rand initially filed this action in the Small Claims Court of the Superior Court of the State of California for the County of Santa Clara on September 29, 2014.  Dkt. No. 1-1.  The small claim alleged that Citibank violated 15 U.S.C. § 1681n.  *Id.* at 3.  On October 27, 2014, Citibank removed the small claims case to this Court pursuant to 28 U.S.C. § 1331 and § 1441(a) based on federal question jurisdiction and then moved to dismiss the complaint.  Dkt. Nos. 1, 7.  Instead of opposing the motion, Rand filed the first amended complaint.  Dkt. No. 10.

//

In his first amended complaint, Rand brings three claims against Citibank: (1) for violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b) by furnishing inaccurate information about Rand, failing to report the results of its investigation, and failing to modify, delete, or permanently block the inaccurate information; (2) for violation of FCRA, 15 U.S.C. § 1681b(f), by willfully and/or negligently obtaining information from a consumer reporting agency without having a permissible purpose; and (3) for violation of the California Consumer Credit Reporting Agencies Act ("CCCRAA"), Cal. Civ. Code, § 1785.25(a) by intentionally processing a fraudulent credit application in Rand's name, passing on adverse and incorrect credit information to credit agencies, and failing to correct the false information.  Dkt. No. 10.

On December 4, 2014, Citibank moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss the first amended complaint for failure to state a claim.  Dkt. No. 12.

The Court has federal question jurisdiction over the FCRA claims under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367. Both parties consented to the jurisdiction of a United States Magistrate Judge under 28 U.S.C. § 636(c).  Dkt. Nos. 6, 8.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the non-movant.  *Coal. For ICANN Transparency, Inc.*, 611 F.3d at 501. The Court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  While a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678

1  (2009).

2       "[I]n dismissing for failure to state a claim under Rule 12(b)(6), 'a district court

3  should grant leave to amend even if no request to amend the pleading was made, unless it

4  determines that the pleading could not possibly be cured by the allegation of other facts.'"

5  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States,* 58 F.3d

6  494, 497 (9th Cir. 1995)).

7                                   **III. DISCUSSION**

8  **A.   Rand States a Claim Under 15 U.S.C. § 1681b(f).**

9       Citibank moves to dismiss Rand's second cause of action under 15 U.S.C. § 1681b(f)

10  on the basis that Citibank's credit inquiry falls within a "permissible purpose" set forth in

11  that section.  Dkt. No. 12.

12      Congress enacted the FCRA in 1970 to regulate credit reporting agencies in order to

13  ensure fair and accurate credit reporting.  *See* 15 U.S.C. § 1681; *Gorman v. Wolpoff &*

14  *Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009).  Among other things, the FCRA

15  imposes certain responsibilities on furnishers of information to credit reporting agencies.

16  *See Gorman*, 584 F.3d at 1154.  The FCRA expressly creates a private right of action for

17  willful or negligent noncompliance with its requirements.  *Id.*; 15 U.S.C. §§ 1681n & o.

18      Specifically, § 1681b(f) of the FCRA provides that "[a] person shall not use or obtain

19  a consumer report for any purpose unless--(1) the consumer report is obtained for a purpose

20  for which the consumer report is authorized to be furnished under this section; and (2) the

21  purpose is certified in accordance with section 1681e of this title by a prospective user of

22  the report through a general or specific certification."  15 U.S.C. § 1681b(f).  The

23  circumstances under which a consumer report is authorized to be furnished are set forth in

24  15 U.S.C. § 1681b(a).  In this case, Citibank contends that its credit inquiry falls within the

25  permissible purposes enumerated under either § 1681b(a)(3)(A) or § 1681b(a)(3)(F) of

26  FCRA.  Dkt. No. 14.  The Court will now address the two asserted permissible purposes in

27  turn.

28  //

1

### 1.      Credit Report Issued In Connection With a Credit Transaction

2    Section 1681b(a)(3)(A) of FCRA provides that "any consumer reporting agency may

3    furnish a consumer report . . . [t]o a person which it has reason to believe--(A) intends to

4    use the information in connection with a credit transaction involving the consumer on

5    whom the information is to be furnished and involving the extension of credit to, or review

6    or collection of an account of, the consumer."  15 U.S.C. § 1681b(a)(3)(A).  This section

7    "can be relied upon by the party requesting a credit report 'only if the consumer initiates the

8    transaction.'"  *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 675 (9th Cir. 2010) (quoting

9    *Stergiopoulos v. First Midwest Bancorp, Inc.*, 427 F.3d 1043, 1047 (7th Cir. 2005)).  The

10   Ninth Circuit has held that a person is "involved" in a credit transaction for purposes of

11   § 1681b(a)(3)(A) where she is "draw[n] in as a participant" in the transaction, but not where

12   she is "oblige[d] to become associated" with the transaction.  *Id.* (quoting *Andrews v. TRW,*

13   *Inc.*, 225 F.3d 1063, 1067 (9th Cir. 2000), *rev'd on other grounds,* 534 U.S. 19 (2001)).

14   In *Andrews*, the district court granted summary judgment in favor of a credit reporting

15   agency, holding that the agency had made the disclosures for a purpose permissible under §

16   1681b(a)(3)(A), because the plaintiff, a victim of identity theft, was "involved" in the credit

17   transaction initiated by the imposter, even though it was against her will.  *Andrews*, 225

18   F.3d at 1066.  In reversing, the Ninth Circuit held that it was a question to be resolved by

19   the jury as to whether the credit reporting agency had reason to believe that it was

20   furnishing information in connection with a consumer transaction involving plaintiff.  *Id.* at

21   1064, 1067-68.  The Ninth Circuit explained that it was "reluctant to conclude that

22   Congress meant to harness any consumer to any transaction where any crook chose to use

23   his or her [social security] number."  *Id.* at 1067.

24   Here, Citibank asserts that "[t]here is simply no allegation indicating that Citibank did

25   not intend to use the information in connection with an extension of credit to Plaintiff."

26   Dkt. No. 14.  The Court disagrees.  The first amended complaint alleges that Rand was a

27   victim of identity theft, and that Citibank either knew or should have known that Rand had

28   not initiated the credit application because he was a longtime customer of Citibank, and

because the social security number was incorrect, which Rand asserts was a clear red flag. Dkt. No. 10 ¶¶ 8-10, 41-43.  Construing these allegations in the light most favorable to Rand, he has sufficiently alleged that Citibank knew or should have known that he was "oblige[d] to become associated" with the transaction and thus was not "involved" in it for purposes of § 1681b(a)(3)(A).  *See Pintos*, 605 F.3d at 675; *Andrews*, 225 F.3d at 1067.

Citibank attempts to distinguish *Andrews* on the basis that it involved a suit against a credit reporting agency and not a "regular user of credit reports," and that the level of reasonable belief that the user of a credit report must have is lower than that of credit reporting agencies.  Dkt. No. 14.  The only support cited by Citibank for this proposition is dicta from *Bickley v. Equifax Info. Servs., LLC*, No. 10-cv-00678, 2013 WL 1932837, at *4 n.5 (W.D. Ky. May 8, 2013).  The Court here does not need to determine if such a distinction is supported by the law in this Circuit because Rand has sufficiently alleged that Citibank knew or should have known that he did not initiate the credit transaction and that the credit report was thus not authorized by § 1681b(a)(3)(A).  For the same reason, Citibank's citations to cases where a credit report was obtained by mistake are inapposite. *See* Dkt. No. 14 at 5.

### 2.    Credit Report Issued In Connection With a Business Transaction

Additionally, section 1681b(a)(3)(F) provides that "any consumer reporting agency may furnish a consumer report . . . [t]o a person which it has reason to believe-- . . . (F) otherwise has a legitimate business need for the information--(i) in connection with a business transaction that is initiated by the consumer; or (ii) to review an account to determine whether the consumer continues to meet the terms of the account."  15 U.S.C. § 1681b(a)(3)(F).  Citibank asserts that "the only reasonable inference to be drawn" from the complaint is that Citibank believed it was obtaining the credit report for a legitimate business need in connection with a business transaction initiated by the consumer.  Dkt. No. 14.

In support for this argument, Citibank cites to the Sixth Circuit's decision in *Bickley v. Dish Network*, LLC, 751 F.3d 724 (6th Cir. 2014).  *Bickley*, however, is not binding on

this Court and is distinguishable.  In *Bickley*, an identity thief used plaintiff's social security number in an attempt to open an account with defendant provider of satellite television services.  *Id.* at 726.  Defendant then contacted three credit reporting agencies to ascertain whether the name and social security number of the potential customer matched.  *Id.*  In affirming summary judgment for defendant on plaintiff's FCRA claim, the Sixth Circuit found that defendant believed in good faith that plaintiff was the consumer initiating the transaction, and that its subsequent conduct was undertaken to assess the purported consumer's eligibility for its business services and protect the consumer.  *Id.* at 732-33.  The Sixth Circuit held that defendant thus had a "legitimate business need" for the information and a "permissible purpose" to obtain plaintiff's "consumer report" under 15 U.S.C. § 1681b(a)(3)(F)(i).  *Id.* at 732-33.  *Bickley* did not involve a credit inquiry in connection with a credit application as in this case.  Furthermore, unlike in *Bickley*, this case is at the pleading stage and Rand has sufficiently alleged that Citibank knew or should have known that he did not initiate the credit transaction.

Because the Court is not convinced that the only reasonable inference from the first amended complaint is that Citibank's credit inquiry was authorized under FCRA, its motion to dismiss the second cause of action under 15 U.S.C. § 1681b(f) is DENIED.

**B.   Rand States a Claim Under 15 U.S.C. § 1681s-2b and the CCCRAA.**

Citibank also moves to dismiss the remaining two causes of action under FCRA and CCCRAA on the basis that the first amended complaint fails to plead facts establishing that information furnished by Citibank to credit reporting agencies was inaccurate.  Dkt. No. 12.

Section 1681s–2(b)(1) provides that, after receiving a notice of dispute "with regard to the completeness or accuracy of any information" provided to a credit reporting agency, the furnisher must:

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) . . . ;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--

　　　　(i) modify that item of information;
　　　　(ii) delete that item of information; or
　　　　(iii) permanently block the reporting of that item of information.

15 U.S.C. 1681s–2(b).

The CCCRAA provides that "[a] person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a).

Citibank argues that the Court should dismiss the first and third causes of action under FCRA and CCCRAA on the ground that Rand fails to allege that Citibank reported an actual inaccuracy because "Citibank received a credit application with Plaintiff's information and subsequently made an inquiry into Plaintiff's credit report in order to process the application received." Dkt. Nos. 12, 14. However, Citibank's argument is based on an overly narrow interpretation of inaccuracy and does not take into account all of the allegations of the complaint.

As the Ninth Circuit has held, an item on a credit report can be "incomplete or inaccurate" within the meaning of 15 U.S.C. § 1681s–2(b)(1)(D), "because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (quoting *Gorman*, 584 F.3d at 1163). Likewise, a report violates the CCCRAA "when it is misleading or incomplete, even if it is technically accurate." *See Cisneros v. U.D. Registry, Inc.*, 39 Cal. App. 4th 548, 579-80 (1995).

The first amended complaint here alleges that Citibank reported "incomplete or inaccurate" information to the credit reporting agency by informing the agency that Rand had applied for a credit card and that he had thereby authorized Citibank to conduct a credit

check, which resulted in a "hard credit inquiry" on Rand's credit report.  Dkt. No. 10 ¶¶ 10-13, 32, 47.  When Citibank confirmed that this information was inaccurate in that Rand had not applied for a credit card and thus had not authorized the credit inquiry but rather that the application was fraudulent, Citibank failed to inform the credit reporting agencies of the same and failed to modify, delete, or permanently block the inquiry.  *Id.* ¶¶ 19-26, 34-36.  The complaint further alleges that this inaccurate or incomplete information adversely affected a credit decision in that Citibank denied Rand a line of credit based on "excessive recent credit inquiries" in Rand's report.  *Id.* ¶¶ 23, 27.  Thus, the first amended complaint sufficiently alleges that Citibank reported information that was "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Carvalho,* 629 F.3d at 890.  Accordingly, Citibank's motion to dismiss the first and third causes of action is DENIED.

## IV. CONCLUSION

For the reasons set forth above, Citibank's motion to dismiss the first amended complaint is denied.

IT IS SO ORDERED.

Date: February 6, 2015

_____
Nathanael M. Cousins
United States Magistrate Judge